Good morning, Illinois Appellate Court First District Court is now in session. The Fourth Division, the Honorable Robert E. Gordon presiding. Case number 1-7-2-6-2-6 consolidated with case number 1-8-0-6-2-1 People versus Willie Morrison. Okay with the lawyers who are going to argue the case, please introduce yourself to the court. Good morning, Your Honors. My name is Brian Reyna with the Office of the State Appellate Defender and I'll be representing the appellant, Willie Morrison. Good morning, Your Honors. My name is Clara Wesolick-Henley. I'm an Assistant States Attorney and I represent the people of the state of Illinois in this case. Okay, as to the appellant, are you going to reserve some time for rebuttal? Yes, Your Honors. With your permission, I would just request a brief five-minute rebuttal. Okay, let's proceed. May it please the court. Your Honors, this court consolidated two cases for argument today and those cases contain two overlapping issues. Those being that the indictments were unconstitutionally overbroad and vague and that the state elicited improper testimony from Morrison regarding his opinion of the veracity of the state's witnesses. I plan to focus today my argument on those two issues. However, I would be happy to take questions on any of the issues raised in the briefs. Regarding the indictments, in the case involving T.W., the state charged two counts of predatory criminal sexual assault and two counts of aggravated criminal sexual assault over a six-year time span. In the case involving D.W., the state charged three counts of predatory criminal assault over a five-year time span. At trial in T.W.'s case, the state elicited evidence of 80 acts relevant to count one, at least three acts relevant to count two, and several acts relevant to counts three and four. Similarly, in D.W.'s case, the state elicited evidence of 25 acts relevant to count one and several acts relevant to count three. The unreasonably long time periods combined with the multiplicity of acts prosecuted under each count denied Morrison the ability to prepare a defense and impinged upon his right against double jeopardy. Your Honors, in my briefs, I cited two out-of-state cases, Kindle and Baker, that found that no defendant could really prepare a defense in similar circumstances and that comparable time periods were unconstitutional on their face. The state is unable to cite any Illinois case, finding that a six-year time frame and a charging instrument is constitutional. In People v. Alvaron, this court addressed the constitutionality of a five-year time span and a charging instrument, and while this court found the charging instrument in that case constitutional, the reasoning in the case suggests that the indictments here were unconstitutional. Specifically in Alvaron, this court distinguished Kindle finding that the number of acts charged under each count made it impossible to determine which acts the jury found beyond a reasonable doubt. That's also the case here. As in Kindle, the state lumped together multiple acts under single counts, and the sheer number of acts make it impossible to determine which of those acts the jury found beyond a reasonable doubt. Where the charging instrument allowed the state to present its evidence in a general manner with little regard to specific dates or times that Morrison could meaningfully challenge, this court should dismiss the indictment and reverse his convictions. The second overlapping issue is that in both cases, the state elicited opinion testimony from Morrison on cross-examination regarding his opinion of the truthfulness of the state's teenage witnesses. In both cases, the state asked Morrison about nine times in rapid succession if he thought T.W. and D.W. were lying regarding the allegations against him. The state agrees that the law generally prohibits prosecutors from questioning a defendant about their opinion of the veracity of the state witnesses. Yet in both cases, the state badgered Morrison about whether he believed these teenage witnesses were liars, forcing him to castigate two young women in front of the jury. This tactic was aimed at embarrassing and humiliating Morrison and denied him a fair trial by invading the province of the jury. Unlike Burgess cited by the state, the questions in this directly related to whether Morrison believed the witnesses were lying. This error is reversible under either prong of the plain error doctrine. Under the first prong, the evidence was close. T.W.'s first trial actually resulted in a mistrial based on similar evidence. The jurors were unable to come to a unanimous verdict. The evidence in both cases consisted primarily of the victim testimony with no eyewitness corroboration. While there was medical evidence introduced, the doctor's opinion was not conclusive as to the timing of the injuries and opened a possibility of another cause, at least in T.W.'s case. Additionally, each of these cases had other trial errors. In T.W.'s case, the state elicited testimony from the state's outcry witness indicating Morrison was a sexual predator and the statement improper opening statements and closing arguments in T.W.'s case. The error also involves a substantial right in that it usurped the jury's province. The jurors are solely responsible for determining the credibility of the witnesses and the testimony elicited here invaded that function. Based on that error, we'd ask the court to reverse Mr. Morrison's convictions and remand for a new trial. New trials. Does anyone on the panel have any questions? No. Okay, then let's hear from the state. Good morning, Your Honors. Again, Claire Wesley Conley for the people in this case. In the indictments for both of these cases, they were not overly broad, where the defendant was apprised of the precise offenses with enough specificity to allow preparation of his defense and to allow pleading a resulting conviction as a bar to future prosecution arising out of the same conduct. In other words, the defendant was not prejudiced in any way by the indictments in these cases. Now, while the defendant exclusively challenges the indictments as to the five-year time span involving the case with D.W. and the six-year time span for the case involving T.W., the date of the offense is not an essential factor in child sex offense cases and does not render an indictment insufficient. In fact, the state is afforded flexibility regarding the date requirement under the Code of Criminal Procedure. It's held that as long as the crime occurred within the statute of limitations and prior to the return of the charging instrument, the state need only provide the best information it has as to when the offense has occurred. And an added degree of flexibility the courts have given where the acts were committed in the of the home by a parent against a child. Here, defendant himself described his role as a step parent to both of these girls. Ultimately, the prosecution narrowed down the indictment period of time as definitively as it could based on the information provided by the victim and based on the locations where the family lived and where the assaults took place. For the case involving T.W., the time span was narrowed down to commence when she was in kindergarten. The defendant had moved into the family home at 62nd and Tallman and it continued until he abused her in the living room of the family home at 69th and Elizabeth. And for D.W., the time span was narrowed down again to when the defendant moved into the family home with the three girls and the family was living at 62nd and Tallman. And she explained that the abuse finally stopped right before her trip to Iowa in 2012. And this would have been within the time period before the charging instrument was before he was indicted. And there is guidance for this matter. This court should follow its earlier decision in Albaran. In Albaran, the time span of five years was held to be sufficient. It was held to be the best information possible based upon the information that the victims provided and it was not overly broad. Likewise, in Guerrero, this court upheld the time span of three years and in Burton, the fourth district upheld the time of two years and nine months. As far as the defendant's citation to the case in Kindle and Baker, this court already addressed the Kindle decision and it should also apply to the Baker decision. These are out-of-district cases and this court found that it's not bound to follow the decisions of courts of last resort in other states, particularly when it involves the own constitutions and statutes. And the charging scheme in this case is much different than the charging scheme in Kindle, for instance. In Kindle, the courts found that there was this continuing criminal crime theory. And in that case, the defendant was charged with multiple acts of the charge providing for each of the offenses. So, for instance, there was three counts of predatory criminal sexual assault involving the different body parts. There was no multiplicity or duplicity of charges in this case and that significantly distinguishes the charging scheme that was used in Kindle. Therefore, this court should find that the indictments were not overly broad when both of them included all the essential elements and provided the defendant with notice of the charges against him. As regarding the second issue that's common to both of the defendants, as to the cross-examination of the defendant regarding the veracity of the victims, defendant did not preserve this issue for review. But even allowing for plain error review in this case, the prosecution questioned him about whether the victim was lying. In Turner, in 1989, our Supreme Court held that while it's generally improper for the prosecution to ask the defendant's opinion on the veracity of other witness, a trial court may allow such questioning where the questions are not designed to humiliate or embarrass the defendant, but rather are designed to have him explain his story where there is overwhelmingly conflicting evidence. In Turner, the defendant testified that he was fishing at the time of the murder and he had nothing to do with the murder, but other witnesses saw the victim in the defendant's car on the night of the murder and his two cellmates heard the defendant confess to the crime. When he was asked about the testimony of some of the witnesses, the defendant either said he did not know why they would testify that way and he also testified that the people were lying, similar to what happened in this case. So this court also rightfully followed the Turner decision in People v. Burgess in 2015, and it's a similar fact pattern to what we have here. Like here, Burgess involved the sexual assault of a minor, and the defense in that case was that the victim and his father made up the story in order to exhort money from the defendant. In that case, the prosecutor asked, similar to the prosecutor asked in this case, quote, you're telling us by the way that the victim got on the witness stand here that day and told all of these people about how he was anally raped by you and digitally penetrated by you, and he made the whole thing up right? And the defendant answered, yes, sir. Here, the prohibition against seeking the defendant's opinion on the veracity of one of the victims was not violated, where the prosecution sought the defendant to articulate his defense in light of the highly conflicting evidence. And clearly, the evidence in this case was highly conflicting in both of these cases. In both cases, the defendant denied that any of this happened, but both of the victims in these cases testified in great detail, excuse me, detail, how the defendant repeatedly sexually assaulted them from the time that they were six and eight years old, and it continued until 2011 and 2012. In both trials, their testimony was supported by the operator to their aunt at a time when they were finally not living with the defendant. The respective victim's testimony was corroborated by their two sisters, in which they recounted how the defendant repeatedly sexually assaulted them during the same time period. And Dr. Rosado, the child abuse, child sex abuse expert, was able to determine that both of the victims had been sexually assaulted. On the other hand, the defendant testified that he had a good and trusting relationship with both of the victims and her two sisters, and he denied that he ever sexually assaulted any of them. His testimony, obviously, was highly conflicted with the victim, her two sisters, her aunt, and the doctor. So the prosecution sought to have the defendant explain his contradictory story in light of the highly conflicting evidence in this case. And I think where the defendant cites too many cases in which they have found that it's improper for the defendant to ask, or for a prosecutor to ask the defendant his opinion regarding the veracity of other witnesses. And Turner acknowledged that, and even cited to one of the cases that the defendant cites to, which is People v. Riley. And in that case, in those cases, those were held, you know, he cites a long line of cases that were prior to Turner. And he also cites to a couple cases that came out after Turner came down. But I think what the disconnect in this line of cases is that in those two cases, they don't cite to Turner. So some of the courts seem to recognize the decision in Turner and apply it. And some courts don't. And I think that's where there's this disconnect between this whole line of cases. So but when the court, this court recognizes the prosecutor in this case, that her line of questioning was proper in both of these trials. And the evidence in this case, beyond what the defendant has to show as that there was a clear and obvious error regarding this cross examination. And may I also remind this court that the standard of review in this case is abuse of discretion. So error will be found for abuse discretion, when only when the trial court's decision was arbitrary, fanciful, or unreasonable to the degree that no reasonable person would agree to it. And certainly in light of the decisions in Turner and Burgess, there should not be found there should not be fined any fine if there was abuse of discretion by the trial court in this case. So not only was there no plain or obvious error in this case, the evidence in this case was not closely balanced by any stretch of the imagination. In both of those cases, like I when I outlined before, you have the testimony of the two victims in this case. You also have in the in the trial involving TW, you also have her videotaped statement in the VSI. And I watched that I found her testimony to be very credible and very sincere. So you have that in addition to her trial testimony, in addition to the testimony of her two sisters, and her aunt, and the testimony of Dr. Rosado in this case, finding that they that both of these victims had been sexually assaulted, there was medical evidence to substantiate both of these girls claims in this case. Um, and as far as the second prong, the defendant can not show that the error was so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closest of the evidence. In this case, the defendant has not successfully established the second prong regarding this error. And as far as the defendants asking this court to consider the fact in when evaluating the closest that the FNC seeks for this court, just consider that there was a hung jury in a previous trial. And I don't think there's any of any case law that would suggest that this court could consider that. In fact, I think there is case law that suggests that this um, uh, any such prior decision, um, in light of all of this, and in light of all the arguments that I made in my, um, in my brief, um, that people respectfully request that the defendant's convictions in both of these cases be affirmed. Thank you. Let's hear it. The rebuttal. Yes, Your Honor. Just briefly. Um, the state is correct that the date is not a factor of the offense in these types of cases. However, even the cases relied on by the state, such as Guerrero, recognize that there does have to be, um, some information about the dates, um, to provide a basis to investigate a defense. Um, the state also claims that the charges were narrowed down. That is not true in either case. The charges, uh, were, the date ranges were charged in the indictment, and they remained the same. Um, when a case is narrowed, uh, Guerrero is an example of this. The state initially charged three years, and this was narrowed down into several months. Um, and that is because in that case, trial counsel requested a bill of particulars, which should have been done here as well. Uh, excuse me. Didn't you get a bill of particulars in these cases? Didn't you get a bill of particulars? There was a bill of particulars that didn't, um, address anything additional in the indictment. It wasn't a request for, for a more informative bill. There was no request, I guess, for, uh, more information regarding the indictment that would come in an additional bill of particulars. There was no additional information about the indictment in that bill of particulars. I know you got the, I thought you got the bill of particulars, but didn't you also get the, uh, the VSI, the victim-sensitive interview in which they talked about the, the various incidents? I outlined as closely as possible children that were six to eight years old could give in terms of dates and times and locations. Weren't you given those things? And wasn't this challenge, uh, I mean, this challenge is something that's going on after trial. It wasn't before trial. You didn't challenge the indictments before trial. Isn't there a difference between challenging an even during the trial? Well, yes, your honor. Um, all the information you discussed was disclosed. Um, although, um, it wasn't particularly more specific in terms of the dates of when any specific acts occurred. Um, and yes, it is different to make this challenge for the first time on appeal as far as the standard of review. Um, I also did argue the trial counsel was ineffective and should have made this challenge below so that he had the ability to investigate a defense. Um, but on appeal now, since I am raising it for the first time, um, I am arguing that it impeded Mr. Morrison's ability to make a defense and, uh, infringed on his right against double jeopardy, which are, um, which is what needs to be established when this issue is raised for the first time on appeal. And while the state claims there aren't, uh, a number of acts under each count, um, there certainly were. This case is distinguishable from Algoron in that, in that case, um, there were only six occurrences and each count contained one, one act. So in this, in this case, uh, it's much more akin to Kindle where we don't know which acts the jury could have found. They could have found a multitude of acts under each count. Um, state could have just given more specific timeframes that way. Um, in TW's case specifically, there were, um, really no references even to what residents, a lot of these instances occurred. So let me ask you this question. Uh, uh, how, uh, how was your client prejudiced here? I mean, he, he says he never touched these girls. So how was he prejudiced, uh, um, for your argument? Tell me how. Uh, yes, your honor. As far as establishing prejudice, the prejudice is the inability to investigate a defense and the, um, what, what is there to investigate when you say you never, you, you never had, uh, any sexual, uh, confrontation with, I mean, what is there to investigate? Well, the cases, um, Kindle and Baker, I think discussed that when you do have a timeframe this broad, that an alibi defense would really be the most effective defense. And even if you were able, the way this was charged here to establish, for instance, an alibi for, um, even if we knew that certain offenses occurred in specific residences, which we don't, if he could establish an alibi for one residence, there's just these general accusations that this everywhere. So I think it's basically impossible to establish an alibi for six years. Um, but it's also, um, impossible that he was with these people a hundred percent of the time during that time. I mean, he did have a job and there were other places he could have possibly been, um, that he just was, uh, there were, for instance, accusations that some of these happened at his office, but without specific dates, I think it's really difficult to, um, get corroborating evidence, maybe from other people that could have been in the office, um, because they wouldn't be able without knowing what dates you're talking about to say whether Mr. Morrison was there, whether they saw him there, um, and saw what he was doing the entire time or not. Um, so that's, that is where the prejudice comes from under our argument there. Um, as far as the second issue that the, um, in response to the state's argument, um, as far as the closest of the evidence under that issue, uh, this case did resolve into basically a credibility contest. There was corroborating evidence of the complainant's testimony in both cases, but the ultimate question was, do you believe this version of events or this version witnesses is irrelevant at this point? Um, I believe that's, those are the only points I have if there are no further questions. No, is there any other further questions? No, sir. Okay. Well, thank you guys for, uh, for clarification, uh, on screen, it says Maddie Connolly, but you introduced yourself as Claire. Can you clarify that Claire? I apologize that Maddie Connolly is my lovely daughter who's in high school, who also sometimes uses this computer for her zoom classes for high school. So, um, I will let her know that she, uh, got her name before the Illinois appellate court today. I apologize for that. Your name is Claire? Claire. Yes. Claire Wesley Connelly. I'm her mother. Spell the last name. Connelly. C O N O L L Y. I wrote the brief. Gotcha. Thank you. Well, thank you guys again. And shortly you'll have either an opinion or an order. Great. Thank you so much. We'll be adjourned.